## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

SEP - 5 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) <br> c/o United States Attorney's Office ) <br> Judiciary Center Building ) <br> 555 4th Street, N.W. ) <br> Washington, D.C. 20530 ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **NINE THOUSAND DOLLARS ($9,000.00)** ) <br> **IN UNITED STATES CURRENCY,** ) <br> ) <br> **and** ) <br> ) <br> **ONE 2001 PORSCHE 911 CARRERA** ) <br> **CONVERTIBLE, VIN: WPOCA299X1S650435,** ) <br> ) <br> **and** ) <br> ) <br> **TEN UNITED STATES SAVINGS BONDS,** ) <br> **EACH IN THE AMOUNT OF $1,000, WITH** ) <br> **SERIAL NUMBERS 0003741367 THROUGH** ) <br> **0003741376,** ) <br> ) <br> **Defendants.** ) <br> ) | **Civil Action No. 06-** <br><br><br><br> CASE NUMBER  1:06CV01559 <br><br> JUDGE: Colleen Kollar-Kotelly <br><br> DECK TYPE: General Civil <br><br> DATE STAMP: 09/05/2006 |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by and through the United States Attorney for the District

of Columbia, respectfully pleads as follows:

1. This is a civil action, *in rem*, brought to enforce 18 U.S.C. § 981(a)(1)(A), which

provides for the forfeiture of any real or personal property that is involved in a money laundering

offense in violation of 18 U.S.C. § 1956 (and/or § 1957). This action is also brought to enforce

18 U.S.C. § 981(a)(1)(C), which provides for the forfeiture of any real or personal property that

*1*

constitutes or is derived from proceeds traceable to, among other offenses, any offense that is a "specified unlawful activity" of the federal anti-money laundering statutes.

2. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355(a). Venue is established by virtue of 28 U.S.C. §§ 1355(b) and 1395.

3. The defendant properties are more fully described as:

    a) nine thousand dollars ($9,000.00) in United States currency ("defendant currency") seized from 6101 16th Street, NW, Apartment # 609, Washington, D.C., on March 29, 2006;

    b) a 2001 Porsche 911 Carrera Convertible, VIN: WPOCA299X1S650435 ("defendant 2001 Porsche"); and

    c) Ten (10) United States Savings Bonds, each in the amount of $1,000 and payable to Ricardo Henry, and bearing serial numbers 0003741367 through 0003741376 ("defendant savings bonds").

4. The defendant properties are subject to forfeiture because, as set forth below: (1) they were involved in money laundering in violation of 18 U.S.C. § 1956; and/or (2) constitute or are derived from proceeds traceable to violations of: (a) 18 U.S.C. § 1347 (Health Care Fraud); and/or (b) 18 U.S.C. § 1035 (False Statements Regarding Health Care Matters); and/or 18 U.S.C. § 152 (Concealment of Assets). All of these offenses are specified unlawful activities as defined in 18 U.S.C. § 1956(c)(7).

## BASES FOR FORFEITURE

5. Medicaid is a means-tested government-sponsored health insurance program for eligible individuals, such as children and the disabled. Medicaid is a "health care benefit program" as defined in 18 U.S.C. § 24(b).

6. In the District of Columbia, the Department of Health Medical Assistance

2

Administration ("MAA") administers the Medicaid program, which is financed jointly by the federal government and the District of Columbia.

7. MAA contracted initially with First Health and later with ACS, Inc. to process and pay claims submitted by Medicaid providers.

8. On or about November 17, 1999, Ricardo Henry, on behalf of Insight Therapeutic Services, Inc. ("INSIGHT"), obtained approval to become a Medicaid provider and was issued Medicaid provider Number 4418180. Henry was listed as the President, CEO, Secretary, and Treasurer of INSIGHT.

9. INSIGHT was a "free-standing mental health clinic" (hereafter "FSMHC"), with offices at 733 15th Street, N.W., Suite 700, Washington, D.C. A FSMHC is a formally organized psychiatric clinic furnishing mental health services on an outpatient basis. A FSMHC is governed by Title 29 of the District of Columbia Municipal Regulations ("the Regulations"). A FSMHC is required by the Regulations to maintain Medicaid patient records and individualized treatment plans in a manner that will render them amenable to audits by federal, state, and Medicaid personnel.

10. All information and phases of a patient's program and medical care are required by the Regulations to be entered in a patient's medical records, including progress notes and summaries of significant face-to-face contact with mental health professionals. Each medical record is required to show the signature of mental health care professionals treating a patient, the discipline of the professional, and the date that information was entered in a patient's medical record.

11. As of April 2001, a FSMHC was reimbursed certain amounts of money for mental

3

health therapy sessions, including: (1) $54 for a session of family therapy, regardless of the number of patients; and (2) $36 per patient in group therapy of 85-90 minutes for a maximum of eight patients or $288. In order for a FSHMC to use the group therapy billing code, the patients in the group could not be family members.

12. INSIGHT provided psychological services to patients eligible for Medicaid in the District of Columbia by employing therapists or clinicians, some of whom were also licensed social workers. Ricardo Henry also provided therapy to some patients.

13. Ricardo Henry, through INSIGHT, caused bills to be submitted to Medicaid through MAA for psychological services provided to adults and children.

14. Ricardo Henry falsely alleged that he had received a Ph.D degree.

15. Ricardo Henry had therapists visit patients once every two weeks, but caused bills to be submitted to Medicaid seeking reimbursement for additional visits and therapy.

16. Ricardo Henry obtained Medicaid identification numbers of patients' family members, even though the family members were not patients.

17. Ricardo Henry caused bills to be submitted to Medicaid seeking reimbursement for services alleged to have been provided to patients' family members.

18. Ricardo Henry directed the billing clerk as to the amount to bill Medicaid for services provided to patients.

19. Ricardo Henry established procedures at INSIGHT to keep patient files and progress notes away from the billing clerk, so that the billing clerk could not compare the bills with the patients' medical records.

20. The billing clerk sent lists to Ricardo Henry showing the patients for whom she was

4

billing.

21. Ricardo Henry caused bills to be submitted to Medicaid for individuals who were no longer patients of INSIGHT.

22. Ricardo Henry caused bills to be submitted to Medicaid for services to patients when appointments had been cancelled.

23. Ricardo Henry caused bills for services to be sent to Medicaid using the group therapy code when such code was not applicable, thereby inflating the amount of the bill.

24. INSIGHT received approximately $250,000 from Medicaid in the year 2000 and received more than $250,000 from Medicaid in 2001.

25. All of the Medicaid payments made to INSIGHT were deposited into a Bank of America held in the name of Ricardo F. Henry, doing business as, Insight Therapeutic Services, Inc.

26. On or about November 30, 2000, Ricardo Henry purchased the defendant 2001 Porsche at Tischer Auto for a purchase price of $84,710.00. He financed part of the purchase price of the vehicle with a loan from SunTrust Bank.

27. From January 2001 through June 2003, Ricardo Henry made payments totaling $50,758.50 on the SunTrust loan for the defendant 2001 Porsche. He made at least 15 of these payments from the Bank of America account for INSIGHT, to which Medicaid payments had been deposited. On November 15, 2002, Ricardo Henry purchased the defendant savings bonds.

28. In or about August 2005, Ricardo Henry filed a Voluntary Petition for Bankruptcy pursuant to Chapter 7 of Title 11 of the United States Code ("Voluntary Petition"). He sought to discharge over $150,000 in debt.

5

29. In Schedule B of his Voluntary Petition, Ricardo Henry was required to list all of his vehicles.

30. In his Voluntary Petition, Ricardo Henry listed only a 1999 Chevrolet Tracker valued at $5,000.

31. In or about September 2005, Ricardo Henry paid Lewin S. Henry to register the defendant 2001 Porsche in New York under the name of Lewin S. Henry. Ricardo Henry caused insurance in the name of Lewin S. Henry to be purchased from Liberty Mutual Insurance Company to insure the defendant 2001 Porsche.

32. On or about October 6, 2005, Ricardo Henry answered interrogatories propounded by the Bankruptcy Trustee in which Ricardo Henry declared, under penalty of perjury, that he had listed all of his assets in his Voluntary Petition.

33. In or about November 2005, Ricardo Henry registered the defendant 2001 Porsche in his own name in the District of Columbia.

34. As part of his Voluntary Petition, Ricardo Henry was required to prepare a Statement of Financial Affairs and list all property that had been transferred within one year, other than property transferred in the ordinary course of business.

35. Ricardo Henry was required to list in his Statement of Financial Affairs the sale of his Maryland house in April 2005, resulting in his receipt of $121,949.85.

36. Ricardo Henry failed to list the sale of his Maryland house in his Voluntary Petition and, instead, declared under penalty of perjury that he had not transferred any property since August 2004.

6

37. In his Voluntary Petition, Ricardo Henry was required to list all firearms that he owned.

38. In his Voluntary Petition, Ricardo Henry failed to list any firearms. He declared that he owned no firearms.

39. At the time he filed his Voluntary Petition, Ricardo Henry owned six firearms, including a valuable Winchester rifle and carbine set.

40. On August 18, 2005, Ricardo Henry signed his Voluntary Petition. He filed his Voluntary Petition on August 25, 2005.

41. In his Voluntary Petition, signed under penalty of perjury, Ricardo Henry listed a balance of $900 in his SunTrust bank account.

42. On August 18, 2005, Ricardo Henry withdrew $6,000 in cash from his SunTrust bank account.

43. On August 25, 2005, Ricardo Henry withdrew $4,000 in cash from his SunTrust bank account.

44. On January 24, 2006, the United States Bankruptcy Court discharged Ricardo Henry of over $80,000 in debt. On March 10, 2006, Ricardo Henry's bankruptcy case was closed.

45. A review of the bankruptcy records in Ricardo Henry's case reveals that he failed to ever list the following assets in his bankruptcy case: (1) the defendant 2001 Porsche; (2) cash of $121,949.85 from the sale of his Maryland home; (3) any firearms; (4) $10,000 in cash withdrawals from his SunTrust account; or (5) ten $1,000 savings bonds.

46. On March 28, 2006, a federal grand jury returned a sixty-two (62) count indictment charging Ricardo Henry with federal violations of law, including Health Care Fraud, in violation

7

of 18 U.S.C. § 1347, False Statements Relating to Health Care Matters, in violation of 18 U.S.C. § 1035, and Concealment of Assets, in violation of 18 U.S.C. § 152.

47.  On March 29, 2006, law enforcement officers executed a federal search warrant at Ricardo Henry's residence and recovered, among other items, the defendant 2001 Porsche, the defendant currency of $9,000 in $100 bills, and several firearms.

## COUNT I
### (Defendant Currency)

48.  All statements and averments made in paragraphs 1-47 are re-alleged and incorporated, herein, by reference.

49.  The defendant currency constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 152(1), because it was property belonging to the estate of a debtor and, in connection with a case under title 11, was knowingly and fraudulently concealed from the United States Trustee.

50.  As such, the defendant currency is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## COUNT II
### (Defendant Currency)

51.  All statements and averments made in paragraphs 1-47 are re-alleged and incorporated, herein, by reference.

52.  The defendant currency constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 152(3), because, in relation to his bankruptcy case under title 11, Ricardo Henry knowingly and fraudulently made a false declaration or statement with respect to the defendant currency.

53. As such, the defendant currency is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## COUNT III
### (Defendant 2001 Porsche)

54. All statements and averments made in paragraphs 1-47 are re-alleged and incorporated, herein, by reference.

55. The defendant 2001 Porsche constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1347, Health Care Fraud (a specified unlawful activity).

56. As such, the defendant 2001 Porsche is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## COUNT IV
### (Defendant 2001 Porsche)

57. All statements and averments made in paragraphs 1-47 are re-alleged and incorporated, herein, by reference.

58. The defendant 2001 Porsche constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1035, False Statements Relating to Health Care Matters (a specified unlawful activity).

59. As such, the defendant 2001 Porsche is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## COUNT V
### (Defendant 2001 Porsche)

60. All statements and averments made in paragraphs 1-47 are re-alleged and incorporated, herein, by reference.

9

61. The defendant 2001 Porsche constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 152(1), Concealment of Assets (a specified unlawful activity).

62. As such, the defendant 2001 Porsche is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## COUNT VI
### (Defendant 2001 Porsche)

63. All statements and averments made in paragraphs 1-47 are re-alleged and incorporated, herein, by reference.

64. The defendant 2001 Porsche constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 152(3), Concealment of Assets (a specified unlawful activity).

65. As such, the defendant 2001 Porsche is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## COUNT VII
### (Defendant 2001 Porsche)

66. All statements and averments made in paragraphs 1-47 are re-alleged and incorporated, herein, by reference.

67. The defendant 2001 Porsche is subject to forfeiture because it was involved in a "financial transaction" as that term is defined by 18 U.S.C. § 1956(c)(4), the purpose of which was to conceal or disguise the nature, location, source, ownership or control of the proceeds of health care fraud (18 U.S.C. § 1347), a "specified unlawful activity" as that term is defined by 18 U.S.C. § 1956(c)(7).

68. As such, the defendant 2001 Porsche is property involved in a money laundering transaction in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and is, therefore, subject to forfeiture

10

pursuant to 18 U.S.C. § 981(a)(1)(A).

## COUNT VIII
### (Defendant 2001 Porsche)

69. All statements and averments made in paragraphs 1-47 are re-alleged and incorporated, herein, by reference.

70. The defendant 2001 Porsche is subject to forfeiture because it was involved in a "financial transaction" as that term is defined by 18 U.S.C. § 1956(c)(4), the purpose of which was to conceal or disguise the nature, location, source, ownership or control of the proceeds of false statements relating to health care matters (18 U.S.C. § 1035), a "specified unlawful activity" as that term is defined by 18 U.S.C. § 1956(c)(7).

71. As such, the defendant 2001 Porsche is property involved in a money laundering transaction in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and, is, therefore, subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## COUNT IX
### (Defendant Savings Bonds)

72. All statements and averments made in paragraphs 1-47 are re-alleged and incorporated, herein, by reference.

73. The defendant savings bonds constitute or are derived from proceeds traceable to a violation of 18 U.S.C. § 1347, Health Care Fraud (a specified unlawful activity).

74. As such, the defendant savings bonds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## COUNT X
### (Defendant Savings Bonds)

75.  All statements and averments made in paragraphs 1-47 are re-alleged and incorporated, herein, by reference.

76.  The defendant savings bonds constitute or are derived from proceeds traceable to a violation of 18 U.S.C. § 1035, False Statements Relating to Health Care Matters (a specified unlawful activity).

77.  As such, the defendant savings bonds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## COUNT XI
### (Defendant Savings Bonds)

78.  All statements and averments made in paragraphs 1-47 are re-alleged and incorporated, herein, by reference.

79.  The defendant savings bonds constitute or are derived from proceeds traceable to a violation of 18 U.S.C. § 152, Concealment of Assets (a specified unlawful activity).

80.  As such, the defendant savings bonds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## COUNT XII
### (Defendant Savings Bonds)

81.  All statements and averments made in paragraphs 1-47 are re-alleged and incorporated, herein, by reference.

82.  The defendant savings bonds are subject to forfeiture because they were involved in a "financial transaction" as that term is defined by 18 U.S.C. § 1956(c)(4), the purpose of which

12

was to conceal or disguise the nature, location, source, ownership or control of the proceeds of health care fraud (18 U.S.C. § 1347), a "specified unlawful activity" as that term is defined by 18 U.S.C. § 1956(c)(7).

83.  As such, the defendant savings bonds are property involved in a money laundering transaction in violation of 18 U.S.C. § 1956(a)(1)(B)(I) and are, therefore, subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## COUNT XIII
### (Defendant Savings Bonds)

84.  All statements and averments made in paragraphs 1-47 are re-alleged and incorporated, herein, by reference.

85.  The defendant savings bonds are subject to forfeiture because they were involved in a "financial transaction" as that term is defined by 18 U.S.C. § 1956(c)(4), the purpose of which was to conceal or disguise the nature, location, source, ownership or control of the proceeds of false statements relating to health care (18 U.S.C. § 1035), a "specified unlawful activity" as that term is defined by 18 U.S.C. § 1956(c)(7).

86.  As such, the defendant savings bonds are property involved in a money laundering transaction in violation of 18 U.S.C. § 1956(a)(1)(B)(I), and, are, therefore, subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the United States of America prays that process of warrant issue for the arrest of the defendant properties as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the defendant properties be forfeited to the United States of America for

disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
D.C. Bar No. 451058

/s/

WILLIAM R. COWDEN
Assistant United States Attorney
D.C. Bar No. 426301

/s/

JUDITH A. KIDWELL
Assistant United States Attorney
United States Attorney's Office
Asset Forfeiture Unit, Criminal Division
555 4th St., NW, Room 4818
Washington, D.C.  20530
(202) 514-7250

14

## VERIFICATION

I, Debra L. LaPrevotte, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Complaint for Forfeiture *in rem* is based upon reports and information known to me and/or furnished to me by law enforcement agents and that everything represented herein is true and correct to the best of my knowledge and belief.

Executed on this 1st day of September 2006

Debra L. LaPrevotte
Special Agent
Federal Bureau of Investigation

15